1
2  UNITED STATES DISTRICT FOR THE
   SOUTHERN DISTRICT OF FLORIDA
3  WEST PALM BEACH DIVISION
4
5  Case # _____
6
7  EDWARD D. FAGAN,
8                        Plaintiff
9  vs.
10
11  APT GROUP LTD.,
12  GERARD JOSEPH;
13  RIA JOSEPH;
14  TRAFICO PRODUCTIONS LLC.;
15  LIBERTY LIF LLC.;
16  GIANT FISH LLC.;
17  MARTIN MERRIMENT COMPANIES INC.;
18  NICK KLAASSEN;
19  JENNIFER MAKEGHEMI;
20  HSBC HOLDINGS PLC;
21  PAUL SCHILLER;
22  ELI TULLY;
23  DEFENDANT JOHN DOE COMPANY
24         CAPITALIST WEALTH INVESTMENTS;
25  DEFENDANT JOHN DOE COMPANY MONTIS TRADING;
26  DEFENDANT JOHN DOE COMPANY MONTIS BANKING;
27  DEFENDANT JOHN DOE SIR LARRY MARRIOTT;
28  DEFENDANT JANE DOE MRS. JULIE BELL;
29  DEFENDANT JANE DOE MRS. LAUREN FITSCHEN;
30  JOHN DOE DEFENDANTS 7 – 10 and
31                        Defendants,
32  _____/
33

FILED BY _____ D.C.

NOV 17 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

34         Edward D. Fagan, Plaintiff pro se, as and for his Complaint, hereby states the following,

35  which facts are true and correct to the best of Plaintiff's knowledge, information and belief [1]:

36                        **INTRODUCTION**

37         **1.**            This claim is brought for (i) fraud; (ii) civil theft; (iii) conspiracy; (iv)

38  negligence; (v) Aiding and Abetting Civil Theft and Fraud; (vi) Unjust Enrichment; (vii)

---

[1]      Plaintiff is currently recovering from major neck surgery and his physical abilities, mental acuity, cognitive ability and thought processing are severely impaired as a result of opioids, including hydromorphone and oxycodone/Percocet, and strong nerve medications, muscle relaxants, anti-depressants and other drugs.  Therefore, Plaintiff is trying to keep this Complaint as simple as possible and get it filed at the earliest possible time and if it is necessary to correct or supplement the facts or language or causes of action, due to Plaintiff's aforesaid disabilities Plaintiff will endeavor to do so.

1    Conversion; (viii) Bailment; (ix) Accounting and (x) Spoliation of Evidence. [2]

2        2.            The wrongdoing centered around a conspiracy to defraud Plaintiff into

3    investing $ 1 MM which came and/or was transferred from one of Plaintiff's HSBC account to

4    another of Plaintiff's HSBC Accounts.

5        3.            Certain of the Defendants conspired with one another and solicited

6    Plaintiff to agree to invest $ 1 MM that Plaintiff was lied to and told that the $ 1 MM was

7    transferred from Plaintiff's bank and the monies were to held in a Special Purpose Vehicle

8    Account and that amount would allow Plaintiff to have his monies combined with other monies

9    that Defendants lied and misrepresented facts to the Plaintiff by assuring him that the $ 1 MM

10   would be put into a High Yield Trading Program that was to be conducted by HSBC Traders out

11   of the London offices.

12       4.            Plaintiff was tricked into wiring the monies that certain Defendants (as

13   explained below) stole Plaintiff's monies and laundered monies as part of The Fraudulent

14   Trading Program Scheme.

15       5.            As a result of the conspiracy and fraud, Plaintiff suffered actual

16   liquidated damages in the amount of $ 1 MM, plus lost business opportunities, and prejudgment

17   interest for a total of $3,757,020.57.

18                                    **PARTIES**

19       6.            Plaintiff Edward D. Fagan [3] ("Plaintiff" or "Fagan") is a victim of the

20   fraudulent solicitation of monies by Defendants (as explained in greater detail and specificity

---

[2]     Plaintiff filed a complaint in Los Angeles Superior Court, *Fagan v Joseph – 21 STCV 20374*, which is currently on Appeal.  Plaintiff obtained a Default as to Defendant Gerard Joseph and his wife Ria Joseph and his companies.  Plaintiff claims as against Wells Fargo are different than the claims being made herein.

[3]     Plaintiff is a disbarred lawyer.  Prior to his disbarment, Plaintiff was a central figure in the cases that led to more than $ 8.2 billion USD for holocaust victims.  Since his disbarment in 2008, Plaintiff has been in the process of rehabilitating himself and now spends his time working on philanthropic matters, recovering Judaica stolen during World War II and returning it to the communities from which it was stolen.  Portions of any recovery will be used for philanthropic purposes.

1    below) to trick Plaintiff to investment his monies in what Defendants represented (albeit falsely)

2    that Plaintiff monies would be blocked in a "Special Purpose Vehicle Account" and the principal

3    amount would be part of a "High Yield Investment Trading Program", which Program would last

4    for 90 Trading Days during which Plaintiff's Investment would yield "Indicative Net Profits" of

5    5 % daily and the Profits would be paid ever Two Weeks (collectively "The Fraudulent Trading

6    Program Scheme").  Plaintiff relied on Defendants misrepresentations to his detriment and

7    suffered liquidated damages (i) $ 1 MM Principal Invested / Stolen; (ii) prejudgment interest as

8    per FL. Stat.  Florida Statute s. 55.03 = $257,020.575 [4]; (iii) lost Profits = $ 2,500,000.00; (iv)

9    treble damages for the civil theft) = $3,777,061.73; and (v) other costs, including costs of suit.

10    7.            Defendant APT GROUP Limited ("APT")  2 St. Oswald's Road,

11    Gloucester, GL1 2SF UK, present address 4 Prince Albert Court Hucclecote, Glos. GL3 4BE.

12    UK.  Defendant APT was part of the solicitation of Plaintiff's monies.  Defendant APT's Officer

13    involved with The Fraud was Alastair Melville, who died in 2020.  As explained in greater detail

14    below, Defendants Nick Klaassen, Defendant Gerard Joseph, Defendant John Doe "Sir Larry

15    Marriot"; Defendant Jane Doe Julie Bell, Defendant Jane Doe Lauren Fitschen; Defendant John

16    Doe Company – Capitalist Wealth Investment / CWI and Defendant John Doe Company Montis

17    Trading conspired with Defendant Gerard Joseph and Defendant Trafico Productions LLC (one

18    of Defendant Gerard Joseph's companies) to defraud Plaintiff into investing their monies in The

19    Fraudulent Trading Program Scheme.   Defendant APT, together with the other Defendants

20    identified above, in turn solicited monies from Plaintiff.  Defendant APT came into this

21    jurisdiction through phone calls and emails that he directed into Florida during the solicitation

---

[4]    The figure for the pre-judgment interests comes from taking the accepted rates used in Florida for daily pre-judgment calculation from https://provemyfloridacase.com/prejudgment-interest-and-post-judgment-interest/ which shows that the rate is $ 1,000,000 x .000130137 or $13.01 per day and there have been 1,975 days from the original $ 1 MM wire transfer until the date of this filing (https://www.timeanddate.com/date/durationresult.html?m1=6&d1=21&y1=2018&m2=11&d2=17&y2=2023).

1   and interactions with Plaintiff in relation to The Fraudulent Trading Program Scheme.

2       8.              Defendant Gerard Joseph ("G. Joseph") is a resident of California at

3   32469 Renoir Rd, Winchester, CA 92596 and who maintains business and office addresses in

4   this jurisdiction.  Defendant G. Joseph was one of the primary conspired and he was conspirator

5   whose US bank account would be used to steal Plaintiff's monies.  After the $ 1 MM was

6   transferred to Defendant G. Joseph, he conspired with Defendant John Doe "Sir Larry Marriot";

7   Defendant Jane Doe Julie Bell, Defendant Jane Doe Lauren Fitschen; Defendant John Doe

8   Company – Capitalist Wealth Investment / CWI and Defendant John Doe Company Montis

9   Trading to steal Plaintiff's monies by Defendant G. Joseph's taking what he referred to as a

10  "Production Fee" and then spreading the remainder of the monies to persons and companies

11  throughout the world, including Defendant Makeghemi, in other words Defendant G. Joseph was

12  responsible to launder the $ 1 MM stolen from Plaintiff's through Defendant G. Joseph's US

13  bank account.   Defendant G. Joseph directed phone calls, emails / faxes and other

14  communications into Florida during the period when he made false representations to Plaintiff

15  about his receipt of any monies, his involvement with The Fraudulent Trading Program Scheme,

16  his unauthorized retention and use of the $ 1 MM when he knew it belonged to Plaintiff.

17      9.              Defendant Ria Joseph ("R. Joseph") is a resident of California at 32469

18  Renoir Rd, Winchester, CA 92596.  Defendant R. Joseph was a recipient and holder in bad faith

19  of monies stolen from Plaintiff.

20      10.             Defendant Trafico Productions LLC ("Trafico") is a California

21  corporation which is owned by Defendant Gerard. Joseph and has been suspended from doing

22  business at the beginning of January 2018, but which continues to hold itself out as having

23  offices at 433 N. Camden Drive, Beverly Hills CA 90210 and/or at 468 N. Camden Drive, Suite

24  200-#426-Q, Beverly Hills CA 90210 and/or c/o Defendant Gerard Joseph, at 32469 Renoir Rd,

1    Winchester, CA 92596. Defendant Trafico was suspended from doing business as of January

2    1, 2018, 6 months before Defendants Trafico and G. Joseph used their bank accounts through

3    which to receive/steal/launder Plaintiff's $ 1 MM.

4         11.        Defendant Liberty Lif LLC ("Liberty") is a California corporation which

5    is owned by Defendant Gerard Joseph and has offices at 433 N. Camden Drive, Beverly Hills

6    CA 90210 and/or at 468 N. Camden Drive, Suite 200-#426-Q, Beverly Hills CA 90210.

7    Defendant G. Joseph used Defendant Liberty's bank accounts through which to receive and

8    steal and launder Plaintiff's $ 1 MM.

9         12.        Defendant Giant Fish LLC ("Giant Fish") is a California corporation

10   which is owned by Defendant Gerard Joseph and has offices at 433 N. Camden Drive, Beverly

11   Hills CA 90210 and/or at 468 N. Camden Drive, Suite 200-#426-Q, Beverly Hills CA 90210.

12   Defendant G. Joseph used Defendant Giant Fish's bank accounts through which to receive

13   and steal and launder Plaintiff's $ 1 MM.

14        13.        Defendant Martin Merriment Companies Inc. ("Martin") is/was a Nevada

15   corporation with offices c/o Incorp. Services Inc. at 3773 Howard Hughes Parkway Suite 500S,

16   Las Vegas, Nevada, which was owned by Defendant Gerard Joseph and/or had offices at 433 N.

17   Camden Drive, Beverly Hills CA 90210 and/or at 468 N. Camden Drive, Suite 200-#426-Q,

18   Beverly Hills CA 90210 and/or c/o Defendant Gerard Joseph, at 32469 Renoir Rd, Winchester,

19   CA 92596. Defendant Martin had its license to do business revoked by the State of Nevada

20   and its license to do business in California suspended as of January 1, 2018, 6 months before

21   Defendant G. Joseph used Defendant Martin's bank accounts through which to receive and

22   steal and launder Plaintiff's $ 1 MM.

23        14.        Defendant Nick Klaassen ("Klaassen") conducts his business in/through

24   a doing business as entity known as "Prosperity Business Solutions" and/or Prosperity Business

1   & Wealth Solutions, Galley House (Unit 2), Moon Lane, Barnet, Greater London, EN5 5YL, and

2   219 St. Vincent Street (Suite 3/2) Glasgow, G2 5QY, Email: nick.prosperity@yahoo.com.

3   Defendant Klaassen was part of the solicitation of Plaintiff to invest with The Fraudulent Trading

4   Program Scheme. Defendant Klaassen conspired with Defendant John Doe "Sir Larry Marriot";

5   Defendant Jane Doe Julie Bell, Defendant Jane Doe Lauren Fitschen; Defendant John Doe

6   Company – Capitalist Wealth Investment / CWI and Defendant John Doe Company Montis

7   Trading in The Fraudulent Trading Program Scheme. Defendant Klaassen was also part of that

8   segment of the conspiracy that aided in getting the $ 1 MM transferred from Plaintiff's HSBC

9   account to Defendant G. Joseph's accounts.

10   15.   Defendant Jennifer Makeghemi ("Makeghemi"), Flat 17, Sidlaw House,

11   Portland Avenue, Stoke, Newington, London, N16 6HH UK; and 103 Charlton Road, Lower

12   Edmonton, London, N9 8HN UK. Defendant Makeghemi conspired with Defendant G. Joseph;

13   Defendant John Doe "Sir Larry Marriot"; Defendant Jane Doe Julie Bell; Defendant Jane Doe

14   Lauren Fitschen; Defendant John Doe Company – Capitalist in The Fraudulent Trading Program

15   Scheme and she was a recipient of some of the monies that were stolen from Plaintiff.

16   16.   Defendant Paul Schiller ("Schiller") is a manager of the Wells Fargo NA

17   ("Wells Fargo") Silverhawk Branch, 38995 Sky Canyon Dr., Murrieta, CA  92563 at which

18   Defendant G. Joseph maintained his personal and company accounts. Defendant Schiller

19   conspired with Defendant G. Joseph to allow the monies stolen from Plaintiff to be received and

20   transferred out without the proper vetting and compliance with customary banking anti-money

21   laundering (AML) requirements and in violation of the instructions in the wire transfer

22   instructions that the monies be held in a Special Purpose Vehicle Account to be used for Trading

23   Purposes. Defendant Schiller helped Defendant G. Joseph to steal Plaintiff's monies or to allow

24   Defendant G. Joseph to use Plaintiff's monies for unauthorized purposes.

1        17.        Defendant Eli Tully ("Tully") is an employee of Custodian of Records of

2    Wells Fargo Bank N.A. located at Wells Fargo's Summons and Subpoenas Department, in the

3    City of Tempe Arizona, who was / is involved with the destruction and/or concealment of

4    records off Defendant G. Joseph's companies – Tritan – Northstar Entertainment Inc., Defendant

5    Giant Fish LLC and Defendant Liberty Lif LLC.    Defendant Tully's wrongdoing had directly

6    interfered with Plaintiff's ability to identify other co-conspirators and to be able to make claims

7    against other parties.  Defendant Tully also knowingly failed to comply with subpoenas through

8    which actions, Defendant Tully as the agent for Wells Fargo Bank has taken improper actions in

9    an apparent attempt to help shield Wells Fargo Bank from primary liability but who instead has

10    now created a spoliation of evidence claims against Defendant Tully and his superiors.

11        18.        Defendant HSBC HOLDING PLC ("HSBC") is an international banking

12    entity with a principal address of 8 Canada Square, Canary Wharf, London, E14 5HQ, UK.

13    Defendant HSBC has multiple banking locations within this jurisdiction.  Defendant HSBC was

14    Plaintiff's bank.  Defendant HSBC negligently and wrongfully allowed the $ 1 MM to be

15    transferred to without ensuring the wire transfer instructions were followed and without ensuring

16    that the $ 1 MM was transferred only to a Special Purpose Vehicle Account.  Defendant HSBC

17    negligently failed to demand the recall / return of the monies and violated its duties to Plaintiff.

18        19.        Defendant John Doe Company, Capitalist Wealth Investments / CWI [5], is

19    a fictitious name whose real identity has been withheld by and can / should be provided by

20    Defendants G. Joseph and Makeghemi.

---

[5]    Capitalist Wealth Investments is a fictitious name for one of the co-conspirators used in this fraud and came into this jurisdiction by emails and other electronic communications to induce Plaintiff to transfer The $ 1 MM as part of the Fraudulent Trading Program Scheme.

1       20.           Defendant John Doe Company Montis Trading [6] a/k/a Montis SPV [7] is a

2  fictitious name whose real identity has been withheld by and can / should be provided by

3  Defendants G. Joseph and Makeghemi.

4       21.           Defendant John Doe Company Montis Banking [8] is a fictitious name

5  whose real identity has been withheld but can be provided by Defendants G. Joseph and

6  Makeghemi.

7       22.           Defendant John Doe Sir Larry Marriott [9] is a fictitious name whose real

8  identity has been withheld but can be provided by Defendants G. Joseph and Makeghemi.

9       23.           Defendant Jane Doe Mrs. Julie Bell [10] is a fictitious name whose real

10  identity has been withheld but can/should be provided by Defendants G. Joseph and Makeghemi.

11       24.           Defendant Jane Doe Mrs. Lauren Fitschen [11] is a fictitious name whose

12  real identity has been withheld but can be provided by Defendants G. Joseph and Makeghemi.

13       25.           Defendants John Does 6 – 10 are fictitious names for the persons/entities

14  whose real identities have been withheld but can be provided by Defendants G. Joseph and

15  Makeghemi.

16       26.           Based on disclosures by Defendant Klaassen, some of the John Does are

---

[6]      Montis Trading Europe is a fictitious name for one of the co-conspirators used in this fraud and came into this jurisdiction by emails and other electronic communications to induce Plaintiff to transfer The $ 1 MM as part of the Fraudulent Trading Program Scheme.

[7]      Montis SPV is a fictitious name for one of the co-conspirators that was used in this fraud and came into this jurisdiction by emails and other electronic communications to induce Plaintiff to transfer The $ 1 MM as part of the Fraudulent Trading Program Scheme.

[8]      Montis banking is a fictitious name for one of the co-conspirators that was used in this fraud and came into this jurisdiction by emails and other electronic communications to induce Plaintiff to transfer The $ 1 MM as part of the Fraudulent Trading Program Scheme.

[9]      Sir Larry Marriot is a pseudonym for an as yet unidentified person who was used in this fraud and came into this jurisdiction by emails and other electronic communications to induce Plaintiff to transfer The $ 1 MM as part of the Fraudulent Trading Program Scheme.

[10]     Mrs. Julie Bell is a pseudonym for an as yet unidentified person who was used in this fraud and came into this jurisdiction by emails and other electronic communications to induce Plaintiff to transfer The $ 1 MM as part of the Fraudulent Trading Program Scheme.

[11]     Mrs. Lauren Fitschen is a pseudonym for an as yet unidentified person who was used in this fraud and came into this jurisdiction by emails and other electronic communications to induce Plaintiff to transfer The $ 1 MM as part of the Fraudulent Trading Program Scheme

1    and/or should include HSBC Officers, including (i) Chris Pipe; (ii) Charles Mortelman; and (iii)

2    Peter McIntyre. [12]

3                                      **JURISDICTION & VENUE**

4        27.            The Court has diversity jurisdiction pursuant to 28 USC § 1332 in that

5    Plaintiff is a resident of Florida and all are residents of other states and/or jurisdictions.

6        28.            The Court has jurisdiction pursuant to Florida's Long Arm Jurisdiction

7    Statutes Fl. Stat. 48.193 insofar as Defendants were involved in:

8    *"1. Operating, conducting, engaging in, or carrying on a business or business venture in this*

9    *state (i.e. the solicitation of investors, such as Plaintiff, in this state). 2. Committing a tortious*

10   *act within this state (i.e. the civil theft of Plaintiff's monies); 6. Causing injury to persons (i.e.*

11   *Plaintiff) within this state arising out of an act or omission by the defendant outside this state, as*

12   *defendant was engaged in solicitation . . . within this state; and/or  7. Breaching a contract in*

13   *this state by failing to perform acts required by the contract to be performed in this state.*

14       29.            The Court also has specific jurisdiction over Defendant APT; Defendant

15   G. Joseph, Defendant John Doe "Sir Larry Marriot"; Defendant Jane Doe Julie Bell; Defendant

16   Jane Doe Lauren Fitschen; Defendant John Doe Company – Capitalist Wealth Investment / CWI

17   and Defendant John Doe Company Montis Trading, based on the phone calls, emails, faxes

18   and/or other electronic communications they directed and/or caused to be directed to Plaintiff in

19   this State, between June 2018 until end of 2019 as part of the solicitation of Plaintiff to transfer $

20   1 MM as part of The Fraudulent Trading Program Scheme.

21       30.            The Court also has specific jurisdiction over Defendant G. Joseph based

22   on the phone calls, emails, faxes and/or other electronic communications that Defendant G.

23   Joseph sent / directed to Plaintiff in Florida, starting early 2019 and continuing into 2020, in

---

[12]    See (i) Chris Pipe - https://www.linkedin.com/in/chris-pipe-131623a8/?originalSubdomain=uk; (ii) Charles
Mortelman - https://www.linkedin.com/in/mortelman/?originalSubdomain=uk; and (iii) Peter McIntyre  -
https://www.thebusinessdesk.com/yorkshire/news/2094510-1.4bn-fund-launched-to-help-smes-across-
yorkshire/peter-mcintyre-head-of-business-banking-hsbc-uk

1   which Defendant G. Joseph makes material misrepresentations as to his involvement with The

2   Fraudulent Trading Program Scheme, his misrepresentations about not being away of the

3   contract pursuant to which Plaintiff's $ 1 MM was transferred; misrepresentations about

4   allegedly not knowing who Defendant APT or Plaintiff are / were;  and other misrepresentations

5   that he sent to or told to Plaintiff in phone calls into this jurisdiction during which Defendant G.

6   Joseph refused to acknowledge his receipt and unauthorized use of Plaintiff's monies.

7        31.        The Court also has jurisdiction over Defendant Klaassen, Defendant

8   Makeghemi, Defendant John Doe "Sir Larry Marriot"; Defendant Jane Doe Julie Bell; Defendant

9   Jane Doe Lauren Fitschen; Defendant John Doe Company – Capitalist Wealth Investment / CWI

10  and Defendant John Doe Company Montis Trading and John and Jane Does, as they were co-

11  conspirators involved with the civil theft of Plaintiff's monies.

12       32.        The Court also has jurisdiction over Defendant R. Joseph; Defendant

13  Trafico; Defendant Liberty; Defendant Giant Fish; and Defendant Martin as they were co-

14  conspirators involved with the civil theft of Plaintiff's monies.

15       33.        The Court has jurisdiction over Defendant Schiller as he was a co-

16  conspirator who aided and abetted Defendant G. Joseph in the civil theft of Plaintiff's monies.

17       34.        The Court has jurisdiction over Defendant Tully as he was involved with

18  the knowing or negligent spoliation of evidence and as a result of electronic communications

19  directed to Plaintiff in this jurisdiction.

20       35.        The Court has general jurisdiction over HSBC as a result of their banking

21  business, registered agents, offices in this jurisdiction, maintenance of offices, telephone

22  numbers, interactive websites, and employees in this jurisdiction, its solicitation of investors in

23  the United States, its interactive website online personal, business and private banking services.

24       36.        Venue is proper in this Court as Plaintiff is a resident of this jurisdiction

1    and many of the wrongful acts in furtherance of The Fraudulent Trading Program scheme.

2                                    **CLAIMS ARE TIMELY**

3          37.              The claims are timely. As noted in herein, Plaintiff made a timely

4    demand for the return of The $ 1 MM Wire.

5          38.              While Plaintiff's claims are based on a 2018 wire transfer and contract,

6    the contract terms did not end until Aug. 2019 and some wrongdoings were not known until the

7    end of 2019 and other wrongdoings are continuing.

8          39.              Plaintiff's claims are also governed by the delayed-discovery rule in and

9    the continuing violations doctrine and as such are timely.

10                                       **FACTS**

11   **Misrepresentations During Solicitation of & Up To Plaintiff $ 1 MM Investment**

12         40.              In January and February of 2018, Plaintiff and his partners/predecessors

13   was solicited by Defendant Klaassen; Defendant John Doe Company CWI; Defendant John Doe

14   Company Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe

15   Company Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe

16   Julie Bell to invest in The Fraudulent Trading Program Scheme.

17         41.              At the time of these solicitations, Plaintiff did not yet know of the

18   involvement of co-conspirators Defendant G. Joseph, Defendant Trafico, Defendant Makeghemi.

19   and Defendant Jane Doe Lauren Fitschen.

20         42.              The Fraudulent Trading Program Scheme was little more than a trick to

21   get Plaintiff to invest monies based on misrepresentations at every level of what were supposed

22   to be the safeguards to ensure that Plaintiff's monies were invested exactly as Defendants

23   represented it would be invested, while all the while Defendants G. Joseph (and Defendants R.

24   Joseph, Trafico, Liberty, Giant Fish and Martin), and Defendant John Doe Company CWI;

1    Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis SPV;

2    Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot; and

3    Defendant Jane Doe Julie Bell and Defendant Makeghemi were stealing Plaintiff's monies.

4          43.            Plaintiff was instructed by Defendant John Doe Company CWI;

5    Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis SPV;

6    Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot; and

7    Defendant Jane Doe Julie Bell that his $ 1 MM Investment would be held in one of Defendant

8    HSBC's Special Purpose Vehicle accounts.  The monies were to be designated and restricted for

9    "trading purposes" only.  These Defendants represented to Plaintiff that his $ 1 MM would be

10    used for / in a "Small Capital Investment Program".

11          44.            Defendant John Doe Company CWI; Defendant John Doe Company

12    Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

13    Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell

14    represented to Plaintiff that the minimum entry level for the Trading Program, i.e. the Small

15    Capital Investment Program is / was $ 1 MM.  Plaintiff monies were originally held in Euro at

16    Defendant HSBC but they were later converted to USD.

17          45.            Defendant John Doe Company CWI; Defendant John Doe Company

18    Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

19    Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell

20    represented to Plaintiff the expected gross return on investment would be 50% - 70% monthly.

21          46.            Defendant John Doe Company CWI; Defendant John Doe Company

22    Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

23    Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell

24    represented to Plaintiff that The Trading Program into which Plaintiff's $ 1 MM would be

1    invested was known as a "High Yield Investment Trade Program".  They also originally

2    represented to Plaintiff that they were able to get him into a limited trading program, and

3    Plaintiff's $ 1 MM would be traded in by HSBC's London or Hong Kong traders.

4          47.              Defendant John Doe Company CWI; Defendant John Doe Company

5    Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

6    Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell

7    represented to Plaintiff that the projected / anticipated average return on investment (hereinafter

8    "ROI") would be either 50 – 70 % per month and/or 1 – 5 % interest daily and that the

9    Indicative Contracted Net Daily Profits based on Historical Data was 5% Daily.

10         48.              Defendant John Doe Company CWI; Defendant John Doe Company

11    Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

12    Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell

13    represented to Plaintiff that HSBC and its traders could pay the high yield ROI because of the $ 1

14    million which HSBC could / would hold to guarantee that it (HSBC) would combine with other

15    investors monies, which combined would be "traded".

16         49.              Defendant John Doe Company CWI; Defendant John Doe Company

17    Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

18    Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell

19    represented to Plaintiff that the "Trading Program" was to be limited to a 90-day trading period.

20         50.              Defendant John Doe Company CWI; Defendant John Doe Company

21    Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

22    Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell

23    represented to Plaintiff that during the 90-day Trade the daily ROI would be paid bi-weekly.

24         51.              Defendant John Doe Company CWI; Defendant John Doe Company

1    Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

2    Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell

3    represented to Plaintiff that at the end of the 90 Day Trading Program, (i) the $ 1 MM principal

4    that HSBC was supposed to be holding in an HSBC Special Purpose Vehicle Account and (ii)

5    the accrued profits from the trading with the $ 1 million Euro, would be returned to Plaintiff.

6        52.            Each of the above representations by Defendant John Doe Company

7    CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis

8    SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot;

9    and Defendant Jane Doe Julie Bell to Plaintiff were false and were intended to trick Plaintiff into

10   investing the $ 1 MM in The Fraudulent Trading Program Scheme.

11       53.            Each of the above representations by Defendant John Doe Company

12   CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis

13   SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot;

14   and Defendant Jane Doe Julie Bell to Plaintiff were made through faxes, emails, phone calls or

15   other electronic transmissions / communications with Plaintiff in Florida.

16       54.            Plaintiff had no way of knowing that at the time the above

17   representations by Defendant John Doe Company CWI; Defendant John Doe Company Montis

18   Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company Montis

19   Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell to Plaintiff

20   were made, they were false and were intended to trick Plaintiff into investing the $ 1 MM in The

21   Fraudulent Trading Program Scheme.

22       55.            Plaintiff relied to his detriment on the above misrepresentations by

23   Defendant John Doe Company CWI; Defendant John Doe Company Montis Trading;  Defendant

24   John Doe Company Montis SPV; Defendant John Doe Company Montis Banking; Defendant

1    John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell to Plaintiff that they were false

2    and were intended to trick Plaintiff into investing the $ 1 MM in The Fraudulent Trading

3    Program Scheme.

4        56.        Plaintiff transfer / collection of his monies from his original HSBC

5    Accounts started in April 2018 and was completed by June 20, 2018. [13]

6        57.        Defendant John Doe Company CWI; Defendant John Doe Company

7    Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

8    Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell

9    represented to Plaintiff that his $ 1 MM started trading on August 13, 2018 and the trading was

10   allegedly completed on December 12, 2018.

11       58.        During that period from August 13, 2018 through December 12, 2018,

12   Defendant John Doe Company CWI; Defendant John Doe Company Montis Trading;  Defendant

13   John Doe Company Montis SPV; Defendant John Doe Company Montis Banking; Defendant

14   John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell failed to make payment of the

15   alleged accrued trading profits every two weeks.

16       59.        After the alleged completion of the 1st Trade that allegedly ended on

17   December 12, 2018, Defendant John Doe Company CWI; Defendant John Doe Company Montis

18   Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company Montis

19   Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell failed to

20   ensure that Plaintiff's $ 1 MM principal was returned and failed to ensure that the Plaintiff's

21   profits at the Indicative Contracted Net Daily Profits were paid.

22       60.        Instead of returning Plaintiff's $ 1 MM principal and payment of accrued

---

[13]    The transfer of Plaintiff's 500,000 Euro from its HSBC Account in Canada to the Special Purpose Vehicle
Account at HSBC UK took a relatively long period as HSBC would NOT allow Plaintiff to transfer ANY monies in
excess of 30,000 Euro per week to ensure what HSBC told Plaintiff were HSBC's restrictions on transfers in excess
of 10,000 Euro limit imposed by the applicable Anti-Money Laundering Laws in Canada and the UK.

1    profits, Defendant John Doe Company CWI; Defendant John Doe Company Montis Trading;

2    Defendant John Doe Company Montis SPV; Defendant John Doe Company Montis Banking;

3    Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie told Plaintiff that they

4    were able to "roll over" Plaintiff's monies into another 90-day Trade to end in spring of 2019.

5           61.           When the 2nd 90-day period ended, Defendant John Doe Company CWI;

6    Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis SPV;

7    Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot; and

8    Defendant Jane Doe Julie Bell failed to ensure that Plaintiff's $ 1 MM principal was returned and

9    failed to ensure that Plaintiff's profits at the Indicative Contracted Net Daily Profits were paid.

10         62.           From Spring 2019 until late November 2019, Defendant John Doe

11    Company CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company

12    Montis SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry

13    Marriot; and Defendant Jane Doe Julie Bell continued to misrepresent the facts and gave

14    multiple excuses as to why they were NOT returning Plaintiff's $ 1 MM principal and why they

15    failed to pay out Plaintiff's profits at the Indicative Contracted Net Daily Profits.

16         63.           From Spring 2019 until late November 2019, Defendant John Doe

17    Company CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company

18    Montis SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry

19    Marriot; and Defendant Jane Doe Julie Bell continued to lie about the reasons why they had

20    NOT returned Plaintiff's $ 1 MM principal and why they failed to pay out Plaintiff's profits at

21    the Indicative Contracted Net Daily Profits.  These Defendants used excuses such as (i) there is

22    Political unrest that affected the banking industry in Hong Kong where The Fraudulent Trade

23    Program was allegedly conducted (which was not true but Plaintiff did NOT know and had no

24    reason to believe that statement was false); (ii) Defendants were having regulatory or other legal

1  issues that were being sorted out in Hong Kong (which again was not true but Plaintiff did not

2  know and had no reason to believe that statement was false) and (iii) the Defendants were

3  sending people to Hong Kong to sort out the issues (which was similarly false).

4      64.      To try to assuage Plaintiff's concerns, Defendant John Doe Company

5  CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis

6  SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot;

7  and Defendant Jane Doe Julie Bell provided Plaintiff with an August 2019 "statement" allegedly

8  showing the Principal and Profits earned and held as of 6 August 2019.

9      65.      As of the end of the summer of 2019, Plaintiff had no way of knowing

10  that his $ 1 MM had been stolen by Defendant G. Joseph (and Defendants R. Joseph, Defendant

11  Trafico, Defendant Liberty, Defendant Giant Fish, Defendant Martin), Defendant John Doe

12  Company CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company

13  Montis SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry

14  Marriot; and Defendant Jane Doe Julie Bell and Defendant Makeghemi.

15  **Misrepresentations After End of Trading Periods When Defendants Engaged in the**
16  **Unlawful Retention, Unauthorized Use and Civil Theft of Plaintiff's Monies**
17
18      66.      Between August 2019 through end of November 2019, Plaintiff and

19  Defendant APT also communicated with Defendant G. Joseph.

20      67.      During this time, Plaintiff was unable to reach Defendant John Doe

21  Company CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company

22  Montis SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry

23  Marriot; and Defendant Jane Doe Julie Bell and Defendant Makeghemi.

24      68.      At the end of November 2019, Plaintiff discovered that the websites used

25  by Defendant John Doe Company CWI; Defendant John Doe Company Montis Trading;

26  Defendant John Doe Company Montis SPV; Defendant John Doe Company Montis Banking; did

1    not operate on a regular basis and business-like schedule and access.

2        69.        At the end of November 2019, Plaintiff discovered that the email

3    addresses of Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell did NOT

4    operate on a regular basis.

5        70.        At this time, Plaintiff discovered that the websites and email addresses of

6    Defendant John Doe Company CWI; Defendant John Doe Company Montis Trading;  Defendant

7    John Doe Company Montis SPV; Defendant John Doe Company Montis Banking as such they

8    did not operate on a regular basis and business-like schedule and access.

9        71.        Unbeknownst to Plaintiff, it was Defendants G. Joseph and his co-

10    conspirators Defendant John Doe Company CWI; Defendant John Doe Company Montis

11    Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company Montis

12    Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell and

13    Defendant Makeghemi, who directed and caused the interruption of their websites and their

14    email addresses.  The purpose for the interruption of their websites and their email address was

15    (i) to interfere with Plaintiff's ability to learn WHERE his $ 1 MM was being held in trust for

16    Plaintiff; (ii) to interfere with Plaintiff's ability to discover WHO was the person responsible for

17    aiding Plaintiff in making his claims for damages; (iii) to interfere with Plaintiff's ability to learn

18    WHERE were Plaintiff's profits from the TWO 90 day trades; (iv) to interfere with Plaintiff's

19    ability to identity other person(s) / entities who / which were involved with The Fraudulent

20    Trading Program Scheme; and (v) to interfere with Plaintiff's ability to discover all the different

21    jurisdictions, including the UK, where Plaintiff can make claims for a particular Defendant based

22    on the additional wrongful acts performed in other jurisdictions in furtherance of The Fraudulent

23    Trading Program Scheme.

24        72.        During this period Defendant APT's now deceased manager and Plaintiff

1    started to make inquiries of Defendant G. Joseph about getting the return of Plaintiff's $ 1 MM

2    principal and the payment of Plaintiff's profits.

3          73.      Defendant G. Joseph sent emails, faxes and other electronic

4    communications to Defendant APT and Plaintiff in which Defendant G. Joseph made even more

5    misrepresentations to Plaintiff.  These included Defendant G. Joseph's misrepresentations in

6    which he (i) lied by claiming that he knew NOTHING about Plaintiff's $ 1 MM investment

7    funds; (ii) lied by claiming that he had never heard of Plaintiff or Defendant APT; or Defendant

8    John Doe Company CWI; or Defendant John Doe Company Montis Trading; or Defendant John

9    Doe Company Montis SPV; or Defendant John Doe Company Montis Banking; or Defendant

10   John Doe Sir Larry Marriot; or Defendant Jane Doe Julie Bell or Defendant Makeghemi.

11         74.      Defendant G. Joseph made the above misrepresentations in an effort to

12   try to conceal the fact that Defendant G. Joseph unlawfully received, unlawfully retained,

13   illegally stole or converted Plaintiff's monies for unauthorized and illegal purposes and had

14   laundered Plaintiff's $ 1 MM so that it could be distributed as Defendant G. Joseph was directed

15   by persons including Defendant John Doe Company CWI; or Defendant John Doe Company

16   Montis Trading; or Defendant John Doe Company Montis SPV; or Defendant John Doe

17   Company Montis Banking; or Defendant John Doe Sir Larry Marriot; or Defendant Jane Doe

18   Julie Bell or Defendant Makeghemi and others whose identities are and have been concealed by

19   Defendant G. Joseph so as to interfere with Plaintiff's rights and claims.

20         75.      In June 2021, Plaintiff received copies of limited records of Defendant G.

21   Joseph's bank accounts, which showed Defendant G. Joseph made material misrepresentations in

22   order to conceal the extent of Defendant G. Joseph's and his co-conspirators wrongdoing.

23         76.      The limited account records for Defendant G. Joseph's accounts at Wells

24   Fargo showed / confirmed the conspiracy and wrongdoing of Defendant Schiller who negligently

1   allowed / conspired with Defendant G. Joseph to wrongfully allow him to access, use, transfer

2   and steal Plaintiff's $ 1 MM.

3   77.      The limited account records for Defendant G. Joseph's accounts at Wells

4   Fargo also showed / confirmed the spoliation and concealment of evidence by Defendant Tully

5   which spoliation and concealment of evidence negligently interfered with Plaintiff's claims and

6   rights and ability to locate and trace the $ 1 MM stolen from Plaintiff and interfered with

7   Plaintiff's ability to identify other co-conspirators and claims.

8   78.      In November and December 2019, Plaintiff made a demand that

9   Defendant G. Joseph return Plaintiff's $ 1 MM principal and pay out Plaintiff's profits at the

10   Indicative Contracted Net Daily Profits.

11   79.      Defendant G. Joseph ignored Plaintiff's November 2019 and December

12   2019 demands for the return of Plaintiff's $ 1 MM principal and pay out Plaintiff's profits at the

13   Indicative Contracted Net Daily Profits.

14   <u>**FIRST CAUSE OF ACTION – FRAUD**</u>

15   80.      Plaintiff realleges/incorporates by specific reference the allegations

16   and facts as set forth in ¶¶ 1 – 5, 6 – 26, 27 – 36, 37 – 39, 40 – 65 and 66 – 79 above as if

17   the same were set forth fully and at length herein.

18   81.      From March to June 2018, Defendant John Doe Company CWI;

19   Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis SPV;

20   Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot; and

21   Defendant Jane Doe Julie Bell made the following misrepresentations to Plaintiff:

22   a.   that the minimum entry level for the Trading Program, i.e. the Small Capital Investment

23        Program is / was $ 1 MM;

24   b.   that the expected gross return on investment would be 50% and 70% per month.

1     c.   that The Trading Program into which Plaintiff's $ 1 MM would be invested was known

2            as a "High Yield Investment Trade Program";

3     d.   that Plaintiff's $ 1 MM would be traded in by HSBC's London or Hong Kong traders.

4     e.   that the projected / anticipated average return on investment (hereinafter "ROI") would

5            be either 50 – 70 % per month and/or 1 – 5 % interest daily and that the Indicative

6            Contracted Net Daily Profits based on Historical Data was 5% Daily.

7     f.   that HSBC and its traders could pay the high yield ROI because of the $ 1 million which

8            HSBC could / would hold to guarantee that it (HSBC) would combine with other

9            investors monies, which combined would be "traded".

10    g.   that the "Trading Program" was to be limited to a 90-day (business day) trading period.

11    h.   that during that 90-day Trading Period, the daily ROI would be paid every two weeks;

12           and

13    i.   that at the end of the 90 Day Trading Program, (i) the $ 1 MM principal that HSBC was

14           supposed to be holding in an HSBC Special Purpose Vehicle Account and (ii) the accrued

15           ROI from the trading with the $ 1 MM, would be returned to Plaintiff.

16     82.       Each of the above representations by Defendant John Doe Company

17 CWI; Defendant John Doe Company Montis Trading; Defendant John Doe Company Montis

18 SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot;

19 and Defendant Jane Doe Julie Bell to Plaintiff were false and were intended to trick Plaintiff into

20 investing the $ 1 MM in The Fraudulent Trading Program Scheme.

21     83.       Each of the above representations by Defendant John Doe Company

22 CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis

23 SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot;

24 and Defendant Jane Doe Julie Bell to Plaintiff were made through faxes, emails, phone calls or

1    other electronic transmissions / communications with Plaintiff in Florida.

2       84.          Plaintiff had no way of knowing that at the time the above

3    representations by Defendant APT; Defendant John Doe Company CWI; Defendant John Doe

4    Company Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe

5    Company Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe

6    Julie Bell to Plaintiff were made, they were false and were intended to trick Plaintiff into

7    investing the $ 1 MM in The Fraudulent Trading Program Scheme.

8       85.          Plaintiff relied to his detriment on the above misrepresentations by

9    Defendant John Doe Company CWI; Defendant John Doe Company Montis Trading; Defendant

10   John Doe Company Montis SPV; Defendant John Doe Company Montis Banking; Defendant

11   John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell to Plaintiff were made, they were

12   false and were intended to trick Plaintiff into investing the $ 1 MM in The Fraudulent Trading

13   Program Scheme.

14      86.          As a result of Plaintiff's reliance on Defendants misrepresentations,

15   Plaintiff suffered damages.

16   **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

17   a.    Awarding Plaintiff Compensatory damages, including liquidated damages of The

18         Principal Invested / Stolen in the amount of $ 1 MM;

19   b.    Awarding Plaintiff prejudgment interest as per FL. Stat.  Florida Statute s. 55.03 in

20         the amount of $257,020.575;

21   c.    Awarding Plaintiff lost Profits in the amount of $ 2,500,000.00;

22   d.    Awarding Plaintiff  treble damages for the civil theft in the amount of $3,777,061.73;

23   e.    Awarding fees and costs of Court in an amount to be determined by the trier of fact;

24   f.    Awarding special, exemplary and punitive damages in an amount to be determined by the

1    trier of fact; and

2    g.    Any further relief this Court deems just and equitable.

3    <u>**SECOND CAUSE OF ACTION – CIVIL THEFT**</u>

4    87.    Plaintiff realleges/incorporates by specific reference the allegations

5    and facts as set forth in ¶¶ 1 – 5, 6 – 26, 27 – 36, 37 – 39, 40 – 65, 66 – 79 and 81 – 86

6    above as if the same were set forth fully and at length herein.

7    88.    Fla. Stat. 772.11-Civil Remedy for Theft provides as follows: *(1) Any*

8    *person who proves by clear and convincing evidence that he or she has been injured in any*

9    *fashion by reason of any violation of ss. <u>812.012</u>-<u>812.037</u> . . . has a cause of action for threefold*

10    *the actual damages sustained and, in any such action, is entitled to minimum damages in the*

11    *amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.*

12    89.    By the end of 2019, it became clear that Defendant John Doe Company

13    CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis

14    SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot;

15    and Defendant Jane Doe Julie Bell had tricked Plaintiff into investing The $ 1 MM and that

16    during the period from June 21, 2018 through the beginning of 2019, Defendant G. Joseph,

17    conspired with those Defendants so that Defendant G. Joseph was able to retain and use

18    Plaintiff's $ 1 MM without authorization and for unauthorized purposes and by unauthorized

19    persons/entities.

20    90.    In November and December 2019, Plaintiff made demands that

21    Defendant G. Joseph return Plaintiff's $ 1 MM principal and Plaintiff's profits at the Indicative

22    Contracted Net Daily Profits.

23    91.    Defendant G. Joseph ignored and failed to comply with Plaintiff's

24    demands and asserted complete control over and ownership of Plaintiff's $ 1 MM.

1   92.        Defendant G. Joseph's failure to return Plaintiff's $ 1 MM principal and

2   profits at the Indicative Contracted Net Daily Profits and the withholding, concealment,

3   conversion and failing to account for the $ 1 MM Principal and daily profits, constituted civil

4   theft in Florida.

5   93.        As a direct and proximate result of Defendants' civil theft of Plaintiff's $

6   1 MM Principal, Plaintiff suffered damages and lost business opportunities.

7   **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

8   a.  Awarding Plaintiff Compensatory damages, including liquidated damages of The

9       Principal Invested / Stolen in the amount of $ 1 MM;

10  b.  Awarding Plaintiff prejudgment interest as per FL. Stat.  Florida Statute s. 55.03 in the

11      amount of $257,020.575;

12  c.  Awarding Plaintiff  lost Profits in the amount of $ 2,500,000.00;

13  d.  Awarding Plaintiff  treble damages for the civil theft in the amount of $3,777,061.73;

14  e.  Awarding fees and costs of Court in an amount to be determined by the trier of fact;

15  f.  Awarding special, exemplary and punitive damages in an amount to be determined by the trier

16      of fact; and

17  g.  Any further relief this Court deems just and equitable.

18               **<u>THIRD CAUSE OF ACTION – CONSPIRACY</u>**

19  94.        Plaintiff realleges/incorporates by specific reference the allegations

20  and facts as set forth in ¶¶ 1 – 5, 6 – 26, 27 – 36, 37 – 39, 40 – 65, 66 – 79, 81 – 86 , 88 – 93

21  above as if the same were set forth fully and at length herein.

22  95.        As explained above, Defendants Nick Klaassen, Defendant Gerard

23  Joseph, Defendant John Doe "Sir Larry Marriot"; Defendant Jane Doe Julie Bell, Defendant Jane

24  Doe Lauren Fitschen; Defendant John Doe Company – Capitalist Wealth Investment / CWI and

1    Defendant John Doe Company Montis Trading conspired with Defendant Gerard Joseph and

2    Defendant Trafico Productions LLC (one of Defendant Gerard Joseph's companies) to defraud

3    Plaintiff into investing their monies in The Fraudulent Trading Program Scheme.

4         96.              As explained above, Defendant John Doe Company CWI; Defendant

5    John Doe Company Montis Trading;  Defendant John Doe Company Montis SPV; Defendant

6    John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant

7    Jane Doe Julie Bell had tricked Plaintiff into investing The $ 1 MM and that during the period

8    from June 21, 2018 through the beginning of 2019, Defendant G. Joseph, conspired with those

9    Defendants so that Defendant G. Joseph was able to retain and use Plaintiff's $ 1 MM without

10   authorization and for unauthorized purposes and by unauthorized persons/entities.

11        97.              The above referenced conspiracy was conducted by the co-

12   conspirators sending of emails, faxes and other electronic communications to Plaintiff in the

13   jurisdiction.

14        98.              As a direct and proximate result of Defendants' conspiracy, Plaintiff

15   suffered damages and lost business opportunities.

16   **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

17        a.  Awarding Plaintiff Compensatory damages, including liquidated damages of The

18            Principal Invested / Stolen in the amount of $ 1 MM;

19        b.  Awarding Plaintiff prejudgment interest as per FL. Stat.  Florida Statute s. 55.03 in the

20            amount of $257,020.575;

21        c.  Awarding Plaintiff  lost Profits in the amount of $ 2,500,000.00;

22        d.  Awarding Plaintiff  treble damages for the civil theft in the amount of $3,777,061.73;

23        e.  Awarding fees and costs of Court in an amount to be determined by the trier of fact;

24        f.  Awarding special, exemplary and punitive damages in an amount to be determined by the trier

1       of fact; and

2    g.  Any further relief this Court deems just and equitable.

3                    **FOURTH CAUSE OF ACTION - NEGLIGENCE**

4       99.           Plaintiff realleges/incorporates by specific reference the allegations

5    and facts as set forth in in ¶¶ 1 – 5, 6 – 26, 27 – 36, 37 – 39, 40 – 65, 66 – 79, 81 – 86 , 88 –

6    93 and 95 – 98 above as if the same were set forth fully and at length herein.

7       100.          During the period From March to June 2018, Defendant John Doe

8    Company CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company

9    Montis SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry

10   Marriot; and Defendant Jane Doe Julie Bell made the following negligent misrepresentations to

11   Plaintiff:

12   a.  that the minimum entry level for the Trading Program, i.e. the Small Capital Investment

13       Program is / was $ 1 MM;

14   b.  that the expected gross return on investment would be 50% and 70% per month.

15   c.  that The Trading Program into which Plaintiff's $ 1 MM would be invested was known

16       as a "High Yield Investment Trade Program";

17   d.  that Plaintiff's $ 1 MM would be traded in by HSBC's London or Hong Kong traders.

18   e.  that the projected / anticipated average return on investment ("ROI" or profits)  would be

19       either 50 – 70 % per month and/or 1 – 5 % interest daily and that the Indicative

20       Contracted Net Daily Profits based on Historical Data was 5% Daily.

21   f.  that HSBC and its traders could pay the high yield ROI because of the $ 1 million which

22       HSBC could / would hold to guarantee that it (HSBC) would combine with other

23       investors monies, which combined would be "traded".

24   g.  that the "Trading Program" was to be limited to a 90-day (business day) trading period.

1      h.  that during that 90-day Trading Period, the daily ROI would be paid every two weeks;

2          and

3      i.  that at the end of the 90 Day Trading Program, (i) the $ 1 MM principal that HSBC was

4          supposed to be holding in an HSBC Special Purpose Vehicle Account and (ii) the accrued

5          ROI from the trading with the $ 1 MM, would be returned to Plaintiff.

6      101.          Each of the above negligent representations by Defendant John Doe

7  Company CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company

8  Montis SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry

9  Marriot; and Defendant Jane Doe Julie Bell to Plaintiff were intended to trick Plaintiff into

10  investing the $ 1 MM in The Fraudulent Trading Program Scheme.

11      102.          Each of the above negligent misrepresentations by Defendant John Doe

12  Company CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company

13  Montis SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry

14  Marriot; and Defendant Jane Doe Julie Bell to Plaintiff were made through faxes, emails, phone

15  calls or other electronic transmissions / communications with Plaintiff in Florida.

16      103.          In addition, Defendant Schiller was negligent in his allowing Defendant

17  G. Joseph to have access to the $ 1 MM.

18      104.          Also, Defendant Tully was negligent in his search for and failure to

19  locate and preserve records related to the bank accounts of Defendants Giant Fish, Liberty and

20  Martin.

21      105.          As a result of Defendants aforesaid negligent misrepresentations by

22  Defendant John Doe Company CWI; Defendant John Doe Company Montis Trading;  Defendant

23  John Doe Company Montis SPV; Defendant John Doe Company Montis Banking; Defendant

24  John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell, and the negligence by

1    Defendant Schiller and the negligence by Defendant Tully, Plaintiff suffered damages.

2    **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

3        a.  Awarding Plaintiff Compensatory damages, including liquidated damages of The

4            Principal Invested / Stolen in the amount of $ 1 MM;

5        b.  Awarding Plaintiff prejudgment interest as per FL. Stat.  Florida Statute s. 55.03 in the

6            amount of $257,020.575;

7        c.  Awarding Plaintiff  lost Profits in the amount of $ 2,500,000.00;

8        d.  Awarding Plaintiff  treble damages for the civil theft in the amount of $3,777,061.73;

9        e.  Awarding fees and costs of Court in an amount to be determined by the trier of fact;

10       f.  Awarding special, exemplary and punitive damages in an amount to be determined by the trier

11           of fact; and

12       g.  Any further relief this Court deems just and equitable.

13   <u>**FIFTH CAUSE OF ACTION – AIDING AND ABETTING**</u>

14       106.  Plaintiff realleges/incorporates by specific reference the allegations

15   and facts as set forth in ¶¶ 1 – 5, 6 – 26, 27 – 36, 37 – 39, 40 – 65, 66 – 79, 81 – 86 , 88 –

16   93, 95 – 98 and 100 – 105 above as if the same were set forth fully and at length herein.

17       107.  As noted, and explained above, Defendant John Doe Company CWI;

18   Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis SPV;

19   Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot; and

20   Defendant Jane Doe Julie Bell aided and abetted / assisted with defrauding Plaintiff into

21   investing the $ 1 MM into The Fraudulent Trading Program Scheme.

22       108.  As noted and explained above, Defendant Schiller aided and abetted

23   Defendant G. Joseph with the unauthorized retention, unauthorized use and unauthorized

24   transfers to other co-conspirators from the $ 1 MM that should have been but was NOT

1    secured in a Special Purpose Vehicle account which was only to be used for Trading

2    Purposes as opposed to be stolen by Defendant G. Joseph, Defendant John Doe Company

3    CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis

4    SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot;

5    and Defendant Jane Doe Julie Bell and Defendant Makeghemi.

6        109.        As noted, and explained above, Defendant Tully aided and abetted

7    the spoliation of evidence of Wells Fargo account records so as to interfere with Plaintiff's

8    rights and ability to locate, trace and identify the persons/entities who were also involved

9    with The Fraudulent Trading Program Scheme.

10       110.        As a result of their aiding and abetting Defendants were able to

11    successfully solicit and trick Plaintiff into investing the $ 1 MM which was then stolen by

12    Defendant G. Joseph, Defendant John Doe Company CWI; Defendant John Doe Company

13    Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

14    Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell and

15    Defendant Makeghemi, and as a direct and proximate result, Plaintiff suffered damages.'

16    **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

17    a.  Awarding Plaintiff Compensatory damages, including liquidated damages of The

18         Principal Invested / Stolen in the amount of $ 1 MM;

19    b.  Awarding Plaintiff prejudgment interest as per FL. Stat. Florida Statute s. 55.03 in the

20         amount of $257,020.575;

21    c.  Awarding Plaintiff  lost Profits in the amount of $ 2,500,000.00;

22    d.  Awarding Plaintiff  treble damages for the civil theft in the amount of $3,777,061.73;

23    e.  Awarding fees and costs of Court in an amount to be determined by the trier of fact;

24    f.  Awarding special, exemplary and punitive damages in an amount to be determined by the trier

1    of fact; and

2       g.  Any further relief this Court deems just and equitable.

3                    <u>**SIXTH CAUSE OF ACTION - UNJUST ENRICHMENT**</u>

4       111.        Plaintiff realleges/incorporates by specific reference the allegations

5    and facts as set forth in ¶¶ 1 – 5, 6 – 26, 27 – 36, 37 – 39, 40 – 65, 66 – 79, 81 – 86 , 88 –

6    93, 95 – 98, 100 – 105 and 107 – 110 above as if the same were set forth fully and at length

7    herein.

8       112.        As noted and explained above, Defendant John Doe Company CWI;

9    Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis SPV;

10   Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot; and

11   Defendant Jane Doe Julie Bell; Defendant G. Joseph, Defendant R. Joseph, Defendant Trafico,

12   Defendant Liberty, Defendant Giant Fish, Defendant Martin, and Defendant Makeghemi ended

13   up being unjustly enriched by their unauthorized retention and use of monies stolen from

14   Plaintiff.

15      113.        As a direct and proximate result of Defendants' unjust enrichment,

16   Plaintiff suffered damages.

17   **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

18      a.  Awarding Plaintiff Compensatory damages, including liquidated damages of The

19          Principal Invested / Stolen in the amount of $ 1 MM;

20      b.  Awarding Plaintiff prejudgment interest as per FL. Stat.  Florida Statute s. 55.03 in the

21          amount of $257,020.575;

22      c.  Awarding Plaintiff  lost Profits in the amount of $ 2,500,000.00;

23      d.  Awarding Plaintiff  treble damages for the civil theft in the amount of $3,777,061.73;

24      e.  Awarding fees and costs of Court in an amount to be determined by the trier of fact;

1      f.   Awarding special, exemplary and punitive damages in an amount to be determined by the trier

2           of fact; and

3      g.   Any further relief this Court deems just and equitable.

4                    <u>**SEVENTH CAUSE OF ACTION - CONVERSION**</u>

5           114.           Plaintiff realleges/incorporates by specific reference the allegations

6      as set forth in ¶¶ 1 − 5, 6 − 26, 27 − 36, 37 − 39, 40 − 65, 66 − 79, 81 − 86 , 88 − 93, 95 − 98,

7      100 − 105, 107 − 110 and 112 - 113 above as if the same were set forth fully and at length

8      herein.

9           115.           As noted and explained above, Defendant John Doe Company CWI;

10     Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis SPV;

11     Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot; and

12     Defendant Jane Doe Julie Bell; Defendant G. Joseph, Defendant R. Joseph, Defendant Trafico,

13     Defendant Liberty, Defendant Giant Fish, Defendant Martin, and Defendant Makeghemi ended

14     up converting for their own use and without authorization, the monies stolen from Plaintiff.

15          116.           As a direct and proximate result of Defendants' conversion, Plaintiff

16     suffered damages.

17     **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

18     a.   Awarding Plaintiff Compensatory damages, including liquidated damages of The

19          Principal Invested / Stolen in the amount of $ 1 MM;

20     b.   Awarding Plaintiff prejudgment interest as per FL. Stat. Florida Statute s. 55.03 in the

21          amount of $257,020.575;

22     c.   Awarding Plaintiff  lost Profits in the amount of $ 2,500,000.00;

23     d.   Awarding Plaintiff  treble damages for the civil theft in the amount of $3,777,061.73;

24     e.   Awarding fees and costs of Court in an amount to be determined by the trier of fact;

1       f.   Awarding special, exemplary and punitive damages in an amount to be determined by the trier

2          of fact; and

3       g.   Any further relief this Court deems just and equitable.

4                  **<u>EIGHTH CAUSE OF ACTION – BAILMENT</u>**

5       117.       Plaintiff realleges/incorporates by specific reference the allegations

6   and facts as set forth in ¶¶ 1 – 5, 6 – 26, 27 – 36, 37 – 39, 40 – 65, 66 – 79, 81 – 86 , 88 –

7   93, 95 – 98, 100 – 105, 107 – 110, 112 – 113 and 115 – 116 above as if the same were set

8   forth fully and at length herein.

9       118.       Defendant John Doe Company CWI; Defendant John Doe Company

10   Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

11   Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell;

12   Defendant G. Joseph, Defendant R. Joseph, Defendant Trafico, Defendant Liberty, Defendant

13   Giant Fish, Defendant Martin, and Defendant Makeghemi receipt and acceptance of the $ 1 MM

14   of Plaintiff's monies or any portion thereof, constituted their consent to hold the monies for the

15   lawful owner, i.e. Plaintiff.

16       119.       In November and December 2019, Plaintiff made formal demands of

17   Defendant G. Joseph for the return of the $ 1 MM Principal and accrued profits.

18       120.       Defendant G. Joseph refused Plaintiffs demands.

19       121.       As a direct and proximate result of Defendants retention of Plaintiff's $ 1

20   MM, Plaintiff suffered damages and lost business opportunities.

21   **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

22       a.   Awarding Plaintiff Compensatory damages, including liquidated damages of The

23          Principal Invested / Stolen in the amount of $ 1 MM;

24       b.   Awarding Plaintiff prejudgment interest as per FL. Stat.  Florida Statute s. 55.03 in the

1    amount of $257,020.575;

2    c.  Awarding Plaintiff lost Profits in the amount of $ 2,500,000.00;

3    d.  Awarding Plaintiff treble damages for the civil theft in the amount of $3,777,061.73;

4    e.  Awarding fees and costs of Court in an amount to be determined by the trier of fact;

5    f.  Awarding special, exemplary and punitive damages in an amount to be determined by the trier

6      of fact; and

7    g.  Any further relief this Court deems just and equitable.

8    **NINETH CAUSE OF ACTION - ACCOUNTING**

9    122.      Plaintiff realleges/incorporates by specific reference the allegations

10  and facts as set forth in ¶¶ 1 – 5, 6 – 26, 27 – 36, 37 – 39, 40 – 65, 66 – 79, 81 – 86 , 88 –

11  93, 95 – 98, 100 – 105, 107 – 110, 112 – 113, 115 – 116 and 118 - 121 above as if the same

12  were set forth fully and at length herein.

13    123.      Plaintiff has a right to an accounting from Defendant John Doe

14  Company CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company

15  Montis SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry

16  Marriot; and Defendant Jane Doe Julie Bell; Defendant G. Joseph, Defendant R. Joseph,

17  Defendant Trafico, Defendant Liberty, Defendant Giant Fish, Defendant Martin, and Defendant

18  Makeghemi of the $ 1 MM Principal and accrued profits and any portion of Plaintiff's monies

19  that any of the above Defendants received.

20    124.      Defendant John Doe Company CWI; Defendant John Doe Company

21  Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company

22  Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell;

23  Defendant G. Joseph, Defendant R. Joseph, Defendant Trafico, Defendant Liberty, Defendant

24  Giant Fish, Defendant Martin, and Defendant Makeghemi are / were obligated to provide

1    Plaintiff with an accounting for the $ 1 MM Principal and accrued profits and any portion of

2    Plaintiff's monies that any of the above Defendants received.

3          125.            Plaintiff made a demand that Defendants provide an accounting for the $

4    1 MM Principal and accrued profits and any portion of Plaintiff's monies that any of the above

5    Defendants received.

6          126.            Defendants refused and/or ignored Plaintiff's request for an accounting.

7          127.            As a direct and proximate result Defendants refusal to provide an

8    accounting, Plaintiff suffered damages to be determined by the trier of fact.

9    **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

10    a.      Directing Defendants to provide an Accounting of the with an accounting for the $ 1

11            MM Principal and accrued profits and any portion of Plaintiff's monies that any of the

12            above Defendants received.

13    b.      An award of fees and costs of Court; and

14    c.      Any further relief this Court deems just and equitable.

15    **<u>TENTH CLAIM AS AGAINST DEFENDANT HSBC (ONLY CLAIM AGAINST HSBC)</u>**

16          128.            Plaintiff realleges/incorporates by specific reference the allegations

17    and facts as set forth in ¶¶ 1 – 5, 6 – 26, 27 – 36, 37 – 39, 40 – 65, 66 – 79, 81 – 86 , 88 –

18    93, 95 – 98, 100 – 105, 107 – 110, 112 – 113, 115 – 116, 118 – 121 and 123 – 127 above as

19    if the same were set forth fully and at length herein.

20          129.            Defendant HSBC owed Plaintiff a duty to ensure that the $ 1 MM

21    wire was sent and only allowed to be released according to the specific instructions that it be

22    held in a Special Purpose Vehicle account and to be used ONLY for Trading.

23          130.            As Defendant HSBC was Plaintiff original sending bank, Defendant

24    HSBC owed Plaintiff and enhanced duty to ensure that the $ 1 MM wire was sent and only

1   allowed to be released according to the specific instructions that it be held in a Special

2   Purpose Vehicle account and to be used ONLY for Trading.

3        131.     Defendant HSBC violated its duty to Plaintiff and failed to ensure

4   that the $ 1 MM was sent to and only allowed to be released according to specific

5   instructions that it be held in a Special Purpose Vehicle "SPV" account and ONLY used for

6   Trading.

7        132.     As a direct and proximate result of Defendant HSBC's failure in its

8   duty as explained above, Plaintiff suffered damages.

9   **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

10      a.  Awarding Plaintiff Compensatory damages, including liquidated damages of The

11         Principal Invested / Stolen in the amount of $ 1 MM;

12      b.  Awarding Plaintiff prejudgment interest as per FL. Stat.  Florida Statute s. 55.03 in the

13         amount of $257,020.575;

14      c.  Awarding Plaintiff  lost Profits in the amount of $ 2,500,000.00;

15      d.  Awarding Plaintiff  treble damages for the civil theft in the amount of $3,777,061.73;

16      e.  Awarding fees and costs of Court in an amount to be determined by the trier of fact;

17      f.  Awarding special, exemplary and punitive damages in an amount to be determined by the trier

18         of fact; and

19      g.  Any further relief this Court deems just and equitable.

20        **ELEVENTH CAUSE OF ACTION – SPOLIATION OF EVIDENCE**

21        133.     Plaintiff realleges/incorporates by specific reference the allegations

22   and facts as set forth in ¶¶ 1 – 5, 6 – 26, 27 – 36, 37 – 39, 40 – 65, 66 – 79, 81 – 86 , 88 –

23   93, 95 – 98, 100 – 105, 107 – 110, 112 – 113, 115 – 116, 118 – 121, 123 – 127 and 129 –

24   132 above as if the same were set forth fully and at length herein.

25        134.     In June 2021, Defendant Tully admitted that his department – the

1  subpoena and compliance Department of Wells Fargo Bank – concealed and/or destruction

2  of evidence related to Defendant G. Joseph's companies, Defendant Giant Fish and Liberty.

3       135.        Defendant Tully was in part responsible to preserve, produce and

4  secure that the evidence related to Defendant G. Joseph's companies, Defendant Giant Fish

5  and Liberty be preserved for Plaintiff's claims.

6       136.        The negligent concealment and/or destruction of evidence related to

7  Defendant G. Joseph's companies, Defendant Giant Fish and Liberty, interfered with

8  Plaintiff's ability to identity and make claims related to The Fraudulent Trading Program

9  Scheme and the identification of other co-conspirators and evidence needed to help prove

10  some of Plaintiff's existing and even unknown claims.

11       137.        As a direct and proximate result of Defendant Tully's negligent

12  concealment and/or destruction of evidence, Plaintiff suffered damages.

13  **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

14     h.  Awarding Plaintiff Compensatory damages, including liquidated damages of The

15         Principal Invested / Stolen in the amount of $ 1 MM;

16     i.  Awarding Plaintiff prejudgment interest as per FL. Stat.  Florida Statute s. 55.03 in the

17         amount of $257,020.575;

18     j.  Awarding Plaintiff  lost Profits in the amount of $ 2,500,000.00;

19     k.  Awarding Plaintiff  treble damages for the civil theft in the amount of $3,777,061.73;

20     l.  Awarding fees and costs of Court in an amount to be determined by the trier of fact;

21     m. Awarding special, exemplary and punitive damages in an amount to be determined by the trier

22         of fact; and

23     n.  Any further relief this Court deems just and equitable.

24
25
26

## TWELFTH CAUSE OF ACTION
### FOR EQUITABLE RELIEF ONLY AND ACCOUNTING FROM DEFENDANT APT

138.     Plaintiff realleges/incorporates by specific reference the allegations and facts as set forth in ¶¶ 1 – 5, 6 – 26, 27 – 36, 37 – 39, 40 – 65, 66 – 79, 81 – 86 , 88 – 93, 95 – 98, 100 – 105, 107 – 110, 112 – 113, 115 – 116, 118 – 121, 123 – 127, 129 – 132 and 134 – 137 above as if the same were set forth fully and at length herein.

139.     Defendant APT has a duty to provide Plaintiff with the documents that he received from Defendant John Doe Company CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell; Defendant G. Joseph, Defendant R. Joseph, Defendant Trafico, Defendant Liberty, Defendant Giant Fish, Defendant Martin, and Defendant Makeghemi.

140.     As a result of Defendant APT's manager's death, Plaintiff was unable to secure documents Defendant APT manager received from Defendant John Doe Company CWI; Defendant John Doe Company Montis Trading;  Defendant John Doe Company Montis SPV; Defendant John Doe Company Montis Banking; Defendant John Doe Sir Larry Marriot; and Defendant Jane Doe Julie Bell; Defendant G. Joseph, Defendant R. Joseph, Defendant Trafico, Defendant Liberty, Defendant Giant Fish, Defendant Martin and Defendant Makeghemi.

141.     As a direct and proximate result of the above referenced failure to secure all available documents from Defendant APT or its now deceased manager, Plaintiff's ability to make claims has been affected.

142.     In addition, during the conversion of Plaintiff's 1 MM Euro and $ 1 MM, upon information and belief, Defendant APT retained the excess / difference between Euro to US Dollar, in the approximate amount of $ 54,000 USD.

1   **WHEREFORE**, Plaintiff demands equitable relief of the production of whatever documents as

2   may still exist that were originally maintained by Defendant APT and its manager and an

3   accounting of the conversion fee from Euro to US Dollar.

4
5   Dated: November 17, 2023
6                                           Edward D. Fagan
7                                           590 NE Wavecrest Way, Boca Raton, FL. 33432
8                                           Tel. (561) 400-0287
9                                           Email: faganinternational@gmail.com
10                                          Plaintiff Pro Se
11
12
13
14
15
16
17
18
19                        **DEMAND FOR JURY TRIAL**
20
21  Plaintiff hereby demands a trial by jury of all issues so triable.
22
23
24  Dated: November 17, 2023
25                                          Edward D. Fagan
26                                          590 NE Wavecrest Way
27                                          Boca Raton, FL. 33432 / Tel. (561) 400-0287
28                                          Email: faganinternational@gmail.com
29                                          Plaintiff Pro Se
30
31